## MUNICIPAL FRONTAGE ON STREET RAILWAY ROUTES.

· [Common Pleas Court of Cuyahoga County.]

TAYLOR EMERSON v. THE FOREST CITY RAILWAY COMPANY ET AL.[*]

Decided, October 26, 1906.

Consents—Of Abutting Owners to the Building of a Street Railway—Municipality as an Abutting Owner—Jurisdiction of Council—Section 2502—Contemporaneous Construction and Acquiescence Therein—Limitation of General Public in Control of Street.

The consent of a municipality, legally granted, to the construction of a street railway along a street upon which the municipality is an abutting owner, may be counted in ascertaining whether a majority of the frontage has consented to the granting of the franchise.

BEACOM, J.

The facts are not in dispute between the parties hereto.  The plaintiff, Emerson, is the owner of a parcel of land abutting on Brownell street, in the city of Cleveland, between Euclid and Central avenues.  On September 24th, the council of Cleveland passed an ordinance granting defendant, the Forest City Railway Company, the right to construct and operate a street railroad in Brownell street, between Euclid and Central avenues.  Said ordinance was lawfully approved by the mayor and published and accepted by the grantee.  The defendant, the Municipal

[*] Affirmed by the Circuit Court, 8 C. C.—N. S., 560.

Traction Company, has acquired by lease all the rights of the Forest City Company under said ordinance.

There abuts upon said street between the points named a cemetery, the Erie Street Cemetery, the property of the city of Cleveland, with a frontage of 363 feet. The written consent of the city of Cleveland as a property holder of abutting property was obtained previous to the granting of the ordinance. If this city property frontage be counted as consenting, then a majority of the property holders abutting on the street had consented to the granting of this franchise. If it be not counted the granting ordinance is invalid.

The issue, then, between the parties hereto, is one of law. Section 2502, Revised Statutes, requires that previous to the granting of a franchise to construct a street railway "the written consent must be obtained of a majority of the property holders upon each street on the line of the proposed street railroad represented by the feet front of the property abutting upon the several streets along which said road is proposed to be constructed." The obtaining of such consents is jurisdictional, and the council has no power to grant a franchise until such consents have been so obtained.

Plaintiff says that the 363 feet belonging to the city of Cleveland should not be counted as consenting; that the statute was intended to protect private property owners from oppression by the city council; that the city was not contemplated as one of the property-holders whose consent could be counted; that the council have no jurisdiction of the subject-matter until a majority of the frontage has consented; that in this case, if jurisdiction was acquired by the council at all, it was acquired from itself and not from abutting property owners. This, then, is the only question that the court is called upon to decide: Should the property belonging to the city of Cleveland be counted as part of the consenting frontage?

1. I have already referred to the language of the statute. It requires the consent of a majority of the property holders represented by the feet front of abutting property. The language is simple and unequivocal and in its terms appears to include all property holders upon each street or part thereof. The lan-

guage seems clear that when the consent of a majority in frontage has been obtained the council has power to grant a franchise—has jurisdiction.

2. In the second place, it is undisputed that such has been the construction placed upon the statute ever since its enactment, that such frontage should be counted, and it is a rule of law, as stated by Chancellor Kent, that "in the construction of statutes the construction which members of the legal profession put upon them is deemed of some importance." Not only has the legal profession by its acquiescence put this construction upon it, but such has been the construction put upon it by all persons called upon in any way to apply the provisions of that section, and it is said, in 12 Wheaton, 210, that "The contemporaneous construction of those called upon to act under a law and appointed to carry its provisions into effect is entitled to great respect." Counsel for plaintiff are, of course, right, that the question has never been directly raised or passed upon by a court, and that acquiescence does not amount to a decision of the question, because the question has never been heretofore directly raised. But counsel for defendant are equally right, that the fact that no person has ever apparently raised this question heretofore does carry with it some weight, much weight, in favor of the defendants.

3. Passing now from the express language of the statute and from the fact of acquiescence in a construction adverse to plaintiff's claim, let us consider the question on principle. The council of a municipality is given by the Legislature control over city highways. Without this statute, Section 2502, the council might grant a franchise to construct a street railway in a street without the consent of an abutting property owner, but in order to protect the abutting owner from oppression by public authorities the Legislature has required that before the council can acquire jurisdiction to grant a franchise a majority of the abutting property holders must assent thereto. This is limiting the general public in its control over the highways and is placing a veto power in the abutting property owners. I do not think the statute giving that power to the individual owner along a highway should be liberally construed in favor of the individual owner

and strictly construed against the power of the public speaking through its public officers. If the contention of plaintiff be true, we might find in some cases, where the city owns large frontages, that a small number of persons with a limited frontage would be able to prevent the construction of street railways over long routes. The city might own parks and cemeteries and public grounds on one or both sides of a route, and a small number of abutting owners representing a small frontage might control the building of a street railway in a long public highway. I am not of opinion that the Legislature ever intended to make a grant to abutting owners which could by any possibility work out such results. I am of opinion that all that can be claimed under this statute is that the consent of the majority of property holders, that is, of all property holders, must be had; that when a consent is obtained from property holders owning a majority of the abutting frontage, whether the muicipality be one of the consenting abutting owners or not, the council does have jurisdiction to act.

This seems clear to me for the three reasons given. I do not hesitate to refuse this injunction and dismiss the petition. Plaintiff excepts.

*Squire, Sanders & Dempsey,* for plaintiff.
*Garfield, Howe & Westenhaver,* for defendant.